Charles William BOITNOTT,
Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00114–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 14, 2000.

Decided April 10, 2001.

Stephen C. Taylor, Humble, for appellant.

Peter C. Speers III, District Attorney, Gail Kikawa McConnell, Assistant District Attorney–Appellate Section, Conroe, for state.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Charles William Boitnott was convicted of the felony offense of driving while intoxicated, subsequent offense. *See* TEX.PEN. CODE ANN. § 49.09(b) (Vernon Supp.2001). Upon evidence that he had two prior convictions for DWI and three prior convictions for felony burglaries, the jury found he was a habitual offender and sentenced him to eighty years in the penitentiary. *See* TEX.PEN.CODE ANN. § 12.42(d) (Vernon Supp.2001).

■ Boitnott contends that he received ineffective assistance of counsel at trial. To prevail he must prove that judged by the totality of the representation, his attorney's performance fell below the standard of prevailing professional norms and there is a reasonable probability that but for his attorney's deficiency, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000). Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712. The burden is on the appellant to overcome that presumption by identifying the acts or omissions of counsel that are alleged to have constituted ineffective assistance and then to affirmatively prove that they fall below the professional norm for reason-

ableness. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Jackson v. State,* 973 S.W.2d 954, 956 (Tex.Crim.App.1998).

■ Any alleged ineffectiveness must be founded in the record, and the record must demonstrate the alleged ineffectiveness. *See Dewberry v. State,* 4 S.W.3d 735, 757 (Tex.Crim.App.1999). Because the record must affirmatively demonstrate the alleged ineffectiveness, the Court of Criminal Appeals has increasingly noted that in most cases, the record on direct appeal is inadequate to develop an ineffective assistance claim. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999); *Jackson,* 973 S.W.2d at 957; *Ex parte Torres,* 943 S.W.2d 469, 475 (Tex.Crim.App.1997).

■ As one ground asserted for his ineffective assistance of counsel claim, Boitnott contends that counsel failed to obtain a ruling of competency after Boitnott was initially found incompetent. Our review of the record reveals no such finding of incompetency. Indeed, the law does not permit a judge to make a finding of incompetency, but rather allocates that task to juries. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02, § 4 (Vernon Supp.2001).

The record shows Boitnott was scheduled for trial on November 11, 1999. On the day set for trial, Boitnott's attorney presented the court with two motions. The first was a Motion for Continuance based on Boitnott's inability to communicate with his counsel in the preparation of his defense. The second was a Motion for Hearing on Incompetency to Stand Trial, in which he requested a jury determination of Boitnott's competency. The trial judge overruled the Motion for Continuance and then heard evidence on the Motion for Hearing on Incompetency to Stand Trial.

Boitnott presented the psychological evaluation prepared by Dr. Walter Quijano

and the testimony of his attorney and Dr. Quijano.[1] Boitnott's attorney testified that Boitnott had been unable to communicate with him in the preparation for his defense. He stated that he had visited with Boitnott between five and seven times. On one or two occasions, Boitnott ran about the cell shouting, but most often he would sit silently before counsel with his head down until counsel left.

Dr. Quijano's testimony was equivocal. He testified both that Boitnott was marginally competent and that he was incompetent. He testified that Boitnott had a factual and rational understanding of the charges and proceedings against him, but that he was incompetent because the side effects of his depression prevented him from assisting counsel. When pressed by the court for a more clear conclusion, Dr. Quijano stated

> He is—He has the—a factual understanding. He has the rational understanding. In the ability to assist counsel, it is this sluggishness and the inability to hold onto attention that is impaired. But, it is workable, you know, if you—if you keep asking questions, if you simplify the questions. It's difficult, but it's workable. Ideally, we should just wait two or three weeks to make conversation more normal, rather than effortful. So, I guess in the end, I can say that he is not competent on the basis of the difficulty in assisting counsel. But intellectually, he understands everything.

At the close of the evidence on the motion, the trial judge did not rule on Boitnott's Motion for Hearing on Incompetency to Stand Trial, but rather announced that having reconsidered, he would grant Boitnott's Motion for Continuance, a mo-

tion that previously had been twice urged and twice denied.

The Code of Criminal Procedure provides that a defendant is incompetent to stand trial if he lacks either sufficient present ability to consult with counsel with a reasonable degree of rational understanding or a rational and factual understanding of the proceedings against him. TEX.CODE CRIM.PROC.ANN. art. 46.02, § 1A(a)(1), (2) (Vernon Supp.2001).

Article 46.02, Texas Code of Criminal Procedure, provides in Section 2(a), Raising the Issue of Incompetency to Stand Trial:

> The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency....

TEX.CODE CRIM.PROC.ANN. art. 46.02, § 2(a) (Vernon 1979); and in Section 4(a), Incompetency Hearing:

> If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial.

TEX.CODE CRIM.PROC.ANN. art. 46.02, § 4(a) (Vernon Supp.2001).

■ The initial judicial determination of whether a jury shall be impaneled to determine competency is commonly referred to as a Section 2 hearing. In a Section 2 hearing brought about by a defense motion, the trial court hears evidence of the defendant's incompetency, subject to cross-examination by the state. *Sisco v. State,* 599 S.W.2d 607, 613 (Tex.Crim.App. [Panel Op.] 1980). At the close of a Section 2 hearing, the judge is to determine whether a Section 4 jury trial on incompetency is required. Only the evidence supporting a finding of incompetency is to be

1. The record contains no court order for a   psychological evaluation.

considered, and the evidence opposing such a finding is not to be weighed against the supporting evidence. Any evidence of probative value supporting a finding of incompetency requires the trial court to submit the issue to a jury in a Section 4 jury hearing. *Id.*

Boitnott received his Section 2 hearing in the form of a hearing on his Motion for Hearing on Incompetency to Stand Trial, wherein he was afforded his opportunity to present evidence of his incompetency. The evidence presented by Boitnott amounted to more than a scintilla in support of a finding of incompetency, and he was thus entitled to a jury determination on that issue. But at the close of the evidence, the trial court failed to make the required determination as to whether a Section 4 hearing was required. In fact, the judge failed to rule on the motion on which he had just heard evidence, opting instead to avoid the issue by granting a previously denied Motion for Continuance. Trial counsel failed to object to the court's failure to rule on the motion, the result being that Boitnott never received a determination-preliminary or otherwise-as to his competency to stand trial.

■ Where the evidence sufficiently raises the competency issue and the judge fails to impanel a jury to decide the question, the issue is not preserved for appeal in the absence of an objection by trial counsel. *Bonner v. State,* 520 S.W.2d 901, 906 (Tex.Crim.App.1975). Trial counsel did not object to the court's failure to impanel a jury, but ultimately obtained the desired relief: a delay of trial due to Boitnott's inability to aid in the preparation of his defense. And appellate counsel, erroneously believing the trial judge found Boitnott incompetent, does not allege trial counsel erred in failing to object to the judge's refusal to impanel a jury to decide the issue of competence.

It is impossible for Boitnott to demonstrate to any reasonable probability that the result of his trial would have been different had trial counsel objected to the court's failure to impanel a jury for the purpose of determining whether Boitnott was competent to stand trial. Our examination of the record reveals that Boitnott's pretrial Motion for Continuance was granted on evidence that an increase in medication over a three-week period would optimize his ability to consult with counsel. There is no evidence bearing on Boitnott's competency at the time he was tried four months later. The record shows counsel took no further action on the matter. There is no evidence from which we may conclude that the prescribed increase in medication did not optimize Boitnott's ability to consult with his attorney. There is no evidence from which we may conclude that it was incumbent upon Boitnott's attorney at the time of trial four months later to raise the issue of incompetence. Boitnott does not satisfy the second prong of the *Strickland* test.

■ Boitnott directs us to alleged deficiencies of trial counsel at the voir dire stage. He contends that trial counsel's performance was deficient in that counsel conducted an inadequate examination of the panel and used two of his peremptory strikes against jurors who were outside the strike zone.[2] He contends counsel's examination was deficient for failure to question panelists regarding potential biases, the presumption of innocence, the burden of proof, reasonable doubt, the elements of the offense, the range of possible

---

2. A panelist is outside the strike zone if, taking into account challenges for cause and possible peremptory strikes, the panelist is beyond the maximum range of possible jurors who may be impaneled in a given case.

punishment for habitual offenders, reliability and credibility of witnesses, one-witness testimony, and a defendant's right not to testify.

The record reveals trial counsel did examine panelists on potential biases stemming from membership in Mothers Against Drunk Driving (MADD) and victimization by drunk drivers. The record also reveals that trial counsel examined the jury on the presumption of innocence; he used an anecdote to show how one who believes that all arrested persons are guilty would not be a proper juror and inquired whether any panelist fit within that category.

The record reveals that six of the nine voir dire topics about which Boitnott complains were covered by other trial participants. The trial court examined the panel on the presumption of innocence, the burden of proof, reasonable doubt, and potential biases stemming from acquaintance or dealings with the prosecutors, the defendant, and defendant's trial counsel. The prosecutor's examination of the panelists, in pertinent part, touched upon the elements of the offense, enhanced punishment, and potential bias stemming from acquaintance or dealings with the arresting officer or the police department. We are not convinced that the few remaining points on which panelists were not examined constitute a voir dire examination that falls below the professional norm for reasonableness; Boitnott's contention does not satisfy the first *Strickland* prong. Boitnott has also failed to satisfy the second *Strickland* prong on this point. He has not and indeed cannot show from the record how counsel's voir dire examination contributed to the denial of a fair trial.

With respect to the alleged misuse of peremptory strikes, Boitnott does not demonstrate from the record how the effective forfeiture of two peremptory challenges may have contributed to the denial of a fair trial. The record contains no showing that trial counsel might have used these strikes effectively elsewhere. Boitnott has identified no prospective juror within the strike zone on whom a peremptory strike should have been used.

Boitnott next contends trial counsel's performance was deficient because he called no witnesses during the guilt/innocence phase, but rather chose to rely on the jailhouse videotape to raise a reasonable doubt. We are not in a position to second-guess trial counsel's defense strategy. Boitnott identifies two possible witnesses for the defense, but the record does not reveal whether the testimony of these witnesses would even be helpful to the defense. He did not demonstrate from the record either how failure to call either of these witnesses falls below the professional norm for reasonableness or that such failure prejudiced his defense.

Finally, Boitnott contends trial counsel's performance at the punishment phase was deficient for failure to produce mitigating evidence and failure to object to the introduction of Boitnott's Texas Department of Corrections (TDC) disciplinary records and pen packets. But our review of the record reveals that trial counsel did produce mitigating evidence. He introduced Boitnott's psychiatric records, which revealed a long history of mental illness, certainly a mitigating factor.

Boitnott also contends that trial counsel allowed the introduction of damaging and prejudicial evidence contained in the pen packets and TDC disciplinary records. Boitnott directs us to no rule of evidence under which the pen packets and TDC records should have been excluded. Consistent with *Strickland*, we must presume that trial counsel made the decision not to contest introduction of this evidence

 

in the exercise of reasonable professional judgment. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Harner v. State,* 997 S.W.2d 695, 704 (Tex.App.—Texarkana 1999, no pet.). Boitnott has not satisfied his burden to rebut that presumption.

The judgment of the trial court is affirmed.